Clinton E. Duke (9784)
Lyndon R. Bradshaw (15097)
**DURHAM JONES & PINEGAR, P.C.**
111 E. Broadway, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| BULLFROG INTERNATIONAL, L.C., | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| CAL SPAS, INC. | Civil No. 2:16-cv-00050-DN |
| Defendant. | Judge David Nuffer |

Plaintiff Bullfrog International, L.C. ("Bullfrog" or "Plaintiff") files this Complaint against Defendant Cal Spas, Inc. ("Cal Spas" or "Defendant"), and complains and alleges as follows:

### PARTIES

1.      Bullfrog is a Utah limited liability company with its principal place of business in Bluffdale, Utah.

2.      Cal Spas is a California corporation with its principal place of business in Pomona, California.

## JURISDICTION AND VENUE

3.      The Court has federal question jurisdiction under 28 U.S.C. § 1331, inasmuch as the claims alleged herein arise under federal laws, statutes, and regulations.  Jurisdiction is also proper under 28 U.S.C. § 1338 as this civil action arises under an Act of Congress relating to patents, copyrights, and trademarks.  The Court has supplemental jurisdiction over any state law claims arising hereunder pursuant to 28 U.S.C. § 1367.

4.      The Court has personal jurisdiction over Defendant pursuant to the Utah Long Arm Statute and consistent with the principles of due process.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

6.      Bullfrog is an industry leader in the designing, manufacturing, and selling of hot tubs with advanced hydrotherapy and relaxation technology.

7.      Bullfrog invests significant resources in the improvement, research, and development of its products and owns a robust intellectual property portfolio including several registered trademarks and issued patents.

8.      One of Bullfrogs trademarks is federal Registration No. 3145096 for the mark "JetPak."

9.      The JetPak Therapy System is Bullfrog's unique hot tub design that allows its customers to select a personalized spa experience.

10.     Bullfrog designs its JetPak modules with various numbers of water jets positioned to provide unique therapy with hydro-messages to specific target areas.

11.     For example, a customer with lower back problems may select the "Lumbar" JetPak, which is designed with jets that focus on lower back therapy.  A customer seeking a soothing message may choose the "RainShower" JetPak, which includes forty-two jets offering a smooth and not too strong surface message.  The "Wellness" JetPak offers a variety of different messages into a single therapy experience.

12.     Once a customer chooses a Bullfrog hot tub series and model, the customer then chooses the types of JetPaks the customer wishes to install in the hot tub.

13.     Bullfrog's JetPaks are modular and can be installed, removed, and moved to a different position in a Bullfrog spa as needed.

14.     Defendant Cal Spas also designs, manufactures, and sells hot tubs and spas.

15.     Cal Spas markets its hot tubs nationally through an interactive website that allows an interested party to find a dealer, find an authorized servicer, and request a quote. Cal Spas also maintains authorized service centers located in Utah.

16.     Cal Spas markets a product on its website and other promotional material called the "U-Pack Hydro-Therapy System," or U-Pack.

17.     On information and belief, Cal Spas' U-Pack products are configurations of spa jets that are permanently placed within the body of a hot tub, but it appears that the U-Pack may be developed into a modular system like Bullfrog's JetPaks.

18.     Cal Spas identifies its various U-Packs by names such as "Rain" and "Healthy."

19.     Cal Spas' presentation of its U-Packs on the Cal Spas website shows the various U-Pack jet configurations set within what appear to be modular devices.

20.     The presentation of the U-Packs mimics and in some ways copies identically Bullfrog's presentation of its JetPaks on the Bullfrog website.

21.     Bullfrog's website presents the JetPaks, which are modular devices, lined up and diminishing to the left.  Cal Spas' website presents the U-Packs as modular-looking devices lined up and diminishing to the left.





22.     This configuration is shown in multiple places on the parties' web sites.





23.    Bullfrog's JetPak webpage presents the JetPaks at a tilted angle with the jets

angled towards the viewer's left.  When the viewer hovers over the JetPak product, the product

turns to face the viewer straight on.  Cal Spas' U-Pack webpage contains an identical

presentation, with the U-Packs at a tilted angle with the jets angled towards the viewer's left.

When the viewer hovers over the U-Pack, the product turns to face the viewer straight on.





24.     Bullfrog's JetPak webpage presents the JetPaks with the products' corresponding

name above the product's image with a brief description of the JetPak below followed by the

6

JetPak's more detailed specifications.  Cal Spas' webpage presents the U-Packs with the products' corresponding name above the products' image with a brief description of the U-Pack below followed by the U-Pack's more detailed specifications.

25.    Cal Spas also imitates, mimics, or otherwise copies other aspects of Bullfrog's website in respect to design, style, animation, and in some instances, the verbatim copying of text. Some of these instances are illustrated above.

26.    Certain feature sections of Cal Spas' website contain text and design duplicative of what is contained on Bullfrog's website.

27.    For instance, a certain Bullfrog webpage presents an image of a Bullfrog hot tub on the left with text appearing on the right.  The webpage contains a header that reads "Reliable Hot Tubs, Built to Last."  The text of the page reads that "Bullfrog Spas are born from hi-tech design technologies and the finest modern materials . . . . Each spa is finished with reliable components and equipment and is backed by the best hot tub warranty available today."



SLC_2624052.1

28.     A corresponding Cal Spas webpage presents an image of a Cal Spas hot tub on the left with text appearing on the right.  The Cal Spas webpage contains a header that reads "Reliable Hot Tubs, Built to Last."  The text of the page states that "Spas are born from hi-tech design technologies and the finest modern materials. . . . Each spa is finished with reliable components and equipment and is backed by the best hot tub warranty available today."



29.     Upon information and belief, multiple Cal Spas agents collectively visited Bullfrog's website over one-hundred and fifty (150) times since January 4, 2016, visiting primarily the "Home," "JetPak Therapy System," and "JetPak selection" webpages.

30.     Bullfrog designs its websites and other promotional material to specifically appeal to its consumers and has invested time, money, and other resources into creating and developing a website with unique and appealing styles, images, animations, and text.

**FIRST CAUSE OF ACTION**
(Trademark Infringement – 15 U.S.C. § 1114)

31.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

32.     Bullfrog has continually used the JetPak mark in commerce since 1996.

8

33.     Bullfrog registered the JetPak mark with the United States Patent and Trademark Office ("PTO") on September 19, 2006 for use of the mark relating to structural parts for hot tubs and spas in the nature of heated pools, namely, seat backs containing water jets for use in hot tubs and spas.

34.     The PTO accepted Bullfrog's Section 15 statement of incontestability in 2011.

35.     Cal Spas' use of the U-Pack mark is a reproduction, copy, or colorable imitation of Bullfrog's registered mark, JetPak, as both marks are used in connection with the sale and advertising of structural parts for the seats of hot tubs containing water jets.

36.     Cal Spas uses the U-Pack mark in commerce, as the mark is used in connection with selling its hot tubs, offering to sale its hot tubs, and advertising its hot tubs, including the U-Packs themselves, on websites and other promotional material.

37.     On information and belief, the U-Pack mark also appears in the distribution of Cal Spas products on packaging material.

38.     Cal Spas' use of the U-Pack mark is likely to cause confusion in consumers due to the U-Pack mark's similarity to Bullfrog's JetPak mark and because U-Pack, like JetPak, applies to products dealing with the configuration of spa jets.

39.     Cal Spas' use of the U-Pack mark is also likely to cause confusion in consumers as to the relationship between the U-Pack and JetPak products or Bullfrog and Cal Spas.

40.     Cal Spas' use of the U-Pack mark is also likely to cause mistake by consumers as to the origin of the U-Pack product in part because Bullfrog and Cal Spas are competitors in the hot tub industry.

41.     Cal Spas' use of the U-Pack mark is also likely to deceive consumers into thinking that U-Pack is somehow related to Bullfrog's JetPak products or that Bullfrog is somehow related to the U-Pack product.

42.     Bullfrog did not give consent for Cal Spas to use the U-Pack mark.

43.     Cal Spas actions of infringing Bullfrog's JetPak mark were intentional and knowing given Bullfrog's presence and reputation in the hot tub industry as well as the notoriety of Bullfrog's JetPak products.

44.     The intentional and knowing nature of Cal Spas' infringement is also demonstrated by Cal Spas' copying of Bullfrog's advertisement material generally and specifically as those advertisement materials pertain to JetPaks.

45.     The intentional and knowing nature of Cal Spas' infringement is further demonstrated by the fact that Cal Spas had notice of Bullfrog's JetPak mark based on JetPak's status as a registered trademark.

46.     Due to Cal Spas' infringement of Bullfrog's registered mark, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from any further use of the U-Pack mark pursuant to 15 U.S.C. § 1116(a).

47.     Bullfrog is also entitled to recover (1) Cal Spas' profits, (2) Bullfrog's damages based on Cal Spas' use of the U-Pack mark, and (3) costs related to this action, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial.

48.     Due to the intentional and knowing nature of Cal Spas' infringement of Bullfrog's registered mark, Bullfrog is entitled to recover three (3) times Cal Spas' profits or damages,

whichever is proven at trial to be greater, together with Bullfrog's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

## SECOND CAUSE OF ACTION
(Trademark Infringement – Common Law)

49.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

50.     Bullfrog has continually and extensively used the JetPak mark in commerce since 1993.

51.     Bullfrog's use of the JetPak mark has always been related to structural parts for hot tubs and spas, especially relating to seat backs containing water jets.

52.     Through Bullfrog's continual and extensive use of the JetPak mark, Bullfrog has developed highly valuable goodwill in association with the JetPak mark.

53.     The U-Pack mark is confusingly and deceptively similar to Bullfrog's JetPak mark.

54.     Cal Spas uses the U-Pack mark in commerce in the selling and offering to sale, including advertising, of its hot tubs and related products.

55.     Cal Spas' use of the U-Pack mark is likely to cause confusion in consumers due to the similarity between the JetPak and U-Pack marks, the use of the marks in the same industry, and the application of the marks to the same type of product.

56.     Cal Spas' advertising of the U-Pack on its website will further confuse consumers due to the presentation of the U-Pack products in a manner that is nearly identical to Bullfrog's presentation of the JetPak products on Bullfrog's website.

11

57.     Cal Spas' use of the U-Pack mark constitutes trademark infringement of Bullfrog's JetPak mark under the common law.

58.     Bullfrog is entitled to an injunction permanently enjoining Cal Spas from any further use of the U-Pack mark in commerce.

59.     Bullfrog is also entitled to damages arising from Cal Spas trademark infringement in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
(Unfair Competition – 15 U.S.C. § 1125(a))

60.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

61.     Bullfrog has continually and extensively used the JetPak mark in commerce since 1996 in connection to structural parts for hot tubs and spas, particularly related to seat backs containing water jets.

62.     Bullfrog has developed highly valuable goodwill in association with the JetPak mark through Bullfrog's continual and extensive use thereof.

63.     Bullfrog registered the JetPak mark on September 19, 2006 and the PTO accepted its incontestability status in 2011 when Bullfrog filed its Section 15 statement of incontestability.

64.     Cal Spas uses the U-Pack mark in commerce to sell its U-Pack products as well as in conjunction with the sale and advertising of its hot tubs and spas.

65.     The U-Pack mark is confusingly and deceptively similar to Bullfrog's JetPak mark.

66.     Cal Spas' use of the U-Pack mark in connection with hot tub and spa products has likely caused or is likely to cause confusion and/or mistake in consumers as to the origin of the

12

U-Pack products and any affiliation, connection, or association between Bullfrog, the JetPak mark, Cal Spas, and the U-Pack mark.

67.     Cal Spas' use of the U-Pack mark in connection with hot tub and spa products has likely caused or is likely to cause confusion and/or mistake in consumers as to the origin or sponsorship, or approval of the U-Pack products, and commercial activities pertaining thereto, by Bullfrog.

68.     Cal Spas' use of the U-Pack mark constitutes unfair competition and is an attempt to benefit from Bullfrog's goodwill associated with the JetPak mark.

69.     Due to Cal Spas' engagement in unfair competition, Bullfrog is entitled to an injunction enjoining Cal Spas from any further use of the U-Pack mark pursuant to 15 U.S.C. § 1116(a).

70.     Bullfrog is also entitled to recover (1) Cal Spas' profits, (2) Bullfrog's damages based on Cal Spas' engagement in unfair competition, and (3) costs related to this action, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
(Trade Dress Infringement – 15 U.S.C. § 1125(a))

71.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Bullfrog's JetPak products are distinctive and easily identifiable by customers due to their unique physical appearance.

73.     The combination of a smooth face with sets of metallic and non-metallic jets contained in a pack-type module is sufficiently distinctive that consumers recognize the products as Bullfrog JetPaks.

13

74.     In certain JetPak products, the placement of jets is done to be visually pleasing and for aesthetic value and is also sufficiently distinctive to identify the products as Bullfrog JetPaks.

75.     This combination of features is non-functional and instead possesses a secondary meaning as it serves as an identifying element of the JetPak to consumers who desire a personalized spa experience.

76.     The similarity between the appearance of a Bullfrog JetPak and the appearance of Cal Spas' U-Packs creates a likelihood of confusion among consumers as to the source of the U-Pack.

77.     Cal Spas' actions in copying the appearance of Bullfrog's JetPaks constitutes trade dress infringement.

78.     Due to Cal Spas' trade dress infringement, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from any further manufacturing, marketing, and selling of a product that is confusingly similar in appearance to Bullfrog's JetPaks pursuant to 15 U.S.C. § 1116(a).

79.     Bullfrog is also entitled to recover (1) Cal Spas' profits, (2) Bullfrog's damages based on Cal Spas' use of the infringing trade dress, and (3) costs related to this action, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
(Dilution – 15 U.S.C. § 1125(c))

80.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

SLC_2624052.1

81.     Bullfrog owns the JetPak mark and has continually used the mark in commerce since 1996.

82.     Bullfrog received registration for the JetPak mark from the PTO on September 19, 2006, and the PTO subsequently accepted Bullfrog's Section 15 statement of incontestability for the mark in 2011.

83.     JetPak is a distinctive and famous mark that is widely recognized by the general consuming public of the United States identifying Bullfrog as the source of the JetPak product.

84.     Bullfrog's JetPak mark has been famous since before Bullfrog's filing of the mark's statement of incontestability in 2011.

85.     Cal Spas recently began using the U-Pack mark in commerce to describe its products that are a configuration of water jets to be placed in a hot tub or spa.

86.     The U-Pack mark is confusingly and deceptively similar to Bullfrog's JetPak mark.

87.     Cal Spas' use of the U-Pack mark is likely to cause dilution of Bullfrog's famous JetPak mark by blurring the distinctiveness of the JetPak mark and implying an association between the two marks.  Cal Spas' use of the U-Pack mark is likely to further dilute Bullfrog's JetPak mark by blurring the origin of the U-Pack products.

88.     Cal Spas has willfully diluted the JetPak mark as evidenced by Cal Spas' copying of Bullfrog's website designs, styles, animations, and text both generally and as specifically related to the JetPak products.

15

89.     Due to Cal Spas' dilution of the JetPak mark, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from any further use of the U-Pack mark pursuant to 15 U.S.C. § 1116(a).

90.     Due to Cal Spas' willful dilution of the JetPak mark, Bullfrog is entitled to recover (1) Cal Spas' profits, (2) any damages sustained by Bullfrog, and (3) the costs of this action, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
(False Advertising – 15 U.S.C. § 1125(a))

91.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

92.     The pictorial representations of Cal Spas' U-Pack products presented on Cal Spas' website and other promotional and advertising materials depict the U-Pack products as modular devices similar to Bullfrog's JetPaks.

93.     On information and belief, the U-Packs are not currently modular.  Rather, the jet configurations contained in the representations on the Cal Spas website are actually set permanently into the Cal Spas hot tub or spa once the customer chooses his or her preferred configuration.

94.     Consumers of hot tubs and spas are often influenced to purchase a particular hot tub model or to purchase from a particular dealer or manufacturer based on numerous factors, including the ability to install and remove certain jet configurations.

95.     Because the ability to switch out jet configurations is likely to influence a consumer's purchasing decision, any representation, whether by picture or text, by Cal Spas that its U-Pack products are modular is material to the consumer.

16

96.     Cal Spas' pictorial representation of its U-Pack products as modular devices has a tendency to deceive a substantial segment of its audience, which is comprised in part of hot tub and spa consumers seeking the interchangeability of jet configurations.

97.     Cal Spas' representations of its U-Pack products as modular devices was placed in interstate commerce by the various images and animations published on the Cal Spas website.

98.     Cal Spas' misleading representation regarding the modular nature of its U-Pack products is likely to injure or has already injured Bullfrog through either a direct diversion of sales or by a lessening of the goodwill associated with Bullfrog's JetPak products.

99.     Due to Cal Spas' false or misleading advertising, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from further representing its U-Pack products as modular systems or devices pursuant to 15 U.S.C. § 1116(a).

100.     Bullfrog is aslo entitled to recover (1) Cal Spas' profits, (2) any damages sustained by Bullfrog, and (3) the costs of this action, pursuant to 15 U.S.C. § 1117(a), in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
(Copyright Infringement – 17 U.S.C. § 501)

101.     Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

102.     Bullfrog's website, including the design, style, font selections, animations, and text, constitute original works of authorship that have been fixed in a tangible medium of expression.

103.     Bullfrog published its website containing the original works of authorship on the internet for the general public to view.

104.    Bullfrog, as the author of original works that comprise its website, has exclusive rights to reproduce or otherwise copy the design, style, font selections, animations, and text as they are compiled and presented on Bullfrog's website.

105.    For example, original elements of Bullfrog's website include text describing Bullfrog's products.  On one particular webpage, Bullfrog includes a header reading "Reliable Hot Tubs, Built to Last."  The webpage then continues by stating that "Bullfrog Spas are born from hi-tech design technologies and the finest modern materials. . . . Each spa is finished with reliable components and equipment and is backed by the best hot tub warranty available today."



106.    On a webpage contained on Cal Spas' website, Cal Spas includes a header reading "Reliable Hot Tubs, Built to Last."  The webpage continues by stating "Spas are born from hi-tech design technologies and the finest modern materials. . . . Each spa is finished with reliable components and equipment and is backed by the best hot tub warranty available today."

SLC_2624052.1



107.     Bullfrog's version of this webpage is presented with a picture of a Bullfrog hot tub on the left and the text located on the left.  Similarly, Cal Spas' webpage contains a picture of a Cal Spas hot tub on the left with the header and accompanying text on the right.

108.     Cal Spas also copied Bullfrog's design elements, fonts, animations, and text in relation to its webpages dedicated to the U-Pack products.

109.     Bullfrog designed and produced an image of its JetPak products in line diminishing to the viewer's left to be included on its website.  Cal Spas' includes an identical depiction of the U-Pack products on its website.



19





110.    Bullfrog designed and produced images of its JetPak products on its JetPak

webpage wherein the various JetPaks are tilted at an angle and angled to the viewer's left.  When

the viewer hovers over the JetPak, the webpage contains animation that then turns the JetPak to face the viewer straight on.  This exact same imaging and animation is copied by Cal Spas on its webpage relating to the U-Pack products.



111.    Bullfrog's publication of its website contents pre-dates Cal Spas' use of the copied material on Cal Spas' website.

112.    The color schemes, fonts, images, animations, and text contained on Bullfrog's website were chosen and written by Bullfrog and produced on its "Home" webpage on or around February 28, 2015 with slight modifications on or around January 4, 2016 and January 11, 2016. The last update to Bullfrog's JetPaks webpage was on or around December 21, 2015.

113.    On information and belief, multiple Cal Spas agents collectively visited Bullfrog's website over one-hundred and fifty (150) times since January 4, 2016, visiting primarily the "Home," "JetPak Therapy System," and "JetPak selection" webpages.

114.    Cal Spas' copying of Bullfrog's color schemes, fonts, images, animations, and text as contained on Bullfrog's website constitutes copyright infringement under the law of the United States and in violation of Bullfrog's exclusive rights.

115.    Cal Spas' infringement of Bullfrog's copyright as related to Bullfrog's website was willful as evidenced by verbatim copying of text, image placement and presentation, and animation, as well as the high volume of visits made by Cal Spas to Bullfrog's website.

116.    Due to Cal Spas' infringement of Bullfrog's copyright, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from copying Bullfrog's advertising, as contained on Bullfrog's website or elsewhere, pursuant to 17 U.S.C. § 502.

117.    Bullfrog is also entitled to recover, at its election, either Bullfrog's actual damages and any additional profits of Cal Spas to be determined at trial, or statutory damages, pursuant to 17 U.S.C. § 504.

SLC_2624052.1

## EIGHTH CAUSE OF ACTION
(Utah Unfair Practices Act – U.C.A. § 13-5-14)

118.    Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

119.    Bullfrog has continually and extensively used the JetPak mark in commerce since 1996 and has accumulated valuable goodwill in connection with that mark.

120.    Cal Spas' use of the U-Pack mark is likely to confuse consumers and is an attempt to benefit from Bullfrog's goodwill associated with the JetPak mark.

121.    Bullfrog has also invested considerable time, money, and resources into developing advertising appealing to its consumers including the utilization of color schemes, font styles, image placements, and the creation of animations and text.

122.    Cal Spas has copied the color schemes, font styles, image placements, animations, and text contained in Bullfrog's advertisements, especially as contained on Bullfrog's website.

123.    Cal Spas' actions are an attempt to improperly benefit from the investment Bullfrog has made in product development, marketing efforts, and consumer research.

124.    Cal Spas' actions constitute anticompetitive behavior and unfair methods of competition as prohibited by the Utah Unfair Practices Act.

125.    Due to Cal Spas' anticompetitive behavior, Bullfrog is entitled to an injunction permanently enjoining Cal Spas from engaging in further unfair methods of competition pursuant to U.C.A. § 13-5-14.

126.    Bullfrog is also entitled to recover its damages pursuant to U.C.A. § 13-5-14 in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
(Utah Unfair Competition Act – U.C.A. § 13-5a-103)

127.  Bullfrog realleges all foregoing paragraphs of this Complaint as if fully set forth herein.

128.  Bullfrog has continually and extensively used the JetPak mark in commerce since 1996 and has accumulated valuable goodwill in connection with that mark.

129.  Cal Spas' use of the U-Pack mark is a willful attempt to benefit from Bullfrog's goodwill as it relates to the JetPak mark.

130.  Bullfrog has also invested considerable time, money, and resources into developing advertising appealing to its consumers including the utilization of color scheme, font styles, image placements, and the creation of animations and text.

131.  Cal Spas has copied the color schemes, font styles, image placements, animations, and text contained in Bullfrog's advertisements, especially as contained on Bullfrog's website.

132.  Cal Spas' actions are a willful attempt to improperly benefit from the investment Bullfrog has made in product development, marketing efforts, and consumer research and have injured Bullfrog.

133.  Cal Spas' actions constitute unfair competition as defined under the Utah Unfair Competition Act, namely Cal Spas' infringement of Bullfrog's JetPak mark and Cal Spas' copying of Bullfrog's website amounts to unlawful and unfair practices.

134.  Cal Spas' actions further constitute unfair competition as defined under the Utah Unfair Competition Act because it leads to a material diminution in value of Bullfrog's intellectual property and constitutes an infringement of Bullfrog's JetPak mark.

24

135.    Due to Cal Spas' willful engagement in unfair competition, Bullfrog is entitled to its (1) actual damages, (2) costs and attorney fees, and (3) punitive damages pursuant to U.C.A. § 13-5a-103(1)(b), in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendant based on its alleged causes of action as follows:

(a) An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's first cause of action;

(b) An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's second cause of action;

(c) An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's third cause of action;

(d) An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's fourth cause of action;

(e) An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's fifth cause of action;

(f)   An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's sixth cause of action;

(g)   An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial, or statutory damages, at Plaintiff's election, as alleged under Plaintiff's seventh cause of action;

(h)   An injunction permanently enjoining Defendant from any further violation of Plaintiff's rights together with money damages in an amount to be proven at trial as alleged under Plaintiff's eighth cause of action;

(i)   Money damages in an amount to be proven at trial as alleged under Plaintiff's ninth cause of action;

(j)   Court and other costs as allowed by law;

(k)   Punitive damages where allowed by applicable law;

(l)   Attorneys' fees where allowed by applicable law; and

(m) Treble damages where allowed by applicable law.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury for all claims so triable.

SLC_2624052.1

DATED this 21st day of January, 2016.

DURHAM JONES & PINEGAR, P.C.

/s/ Clinton E. Duke
Clinton E. Duke
Lyndon R. Bradshaw

*Attorneys for Plaintiff*

27